UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RANESHA RENEE JORDAN,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

Defendant.

Case No. ED CV 10-1546 PJW

MEMORANDUM OPINION AND ORDER

I. INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying her applications for Supplemental Security Income ("SSI") and Disability Insurance benefits ("DIB"). Plaintiff claims that the Administrative Law Judge ("ALJ") erred when he found that she could perform her past relevant work and when he found that she was not credible. For the following reasons, the Agency's decision is affirmed.

II. BACKGROUND

Plaintiff applied for SSI and DIB on December 5, 2007, alleging that she had been unable to work since December 1, 2004, due to bipolar disorder and problems with her legs. (Administrative Record

("AR") 100-11, 137.) The Agency denied the applications initially and on reconsideration. (AR 48-52; Joint Stip. 2.) Plaintiff then requested and was granted a hearing before an ALJ. (AR 55-56.) On August 5, 2009, she appeared with counsel and testified at the hearing. (AR 20-42.) On November 16, 2009, the ALJ issued a decision denying benefits. (AR 10-19.) After the Appeals Council denied Plaintiff's request for review (AR 1-3), she commenced this action.[1]

## III. ANALYSIS

### A. Plaintiff's Past Relevant Work

The ALJ determined that Plaintiff had past relevant work as a data entry clerk/medical biller and child care provider. (AR 18.) Plaintiff argues that he failed to adequately explain how he reached this determination. (Joint Stip. 4-5.) Specifically, she complains that he did not "properly identif[y] what if any of [her] past work constitutes substantial gainful activity, given the minimal earnings identified on the earnings record." (Joint Stip. 4-5.) As a result, in Plaintiff's view, the ALJ's ultimate determination that Plaintiff could perform her past relevant work cannot stand. For the following reasons, the Court disagrees.

---

[1] In her applications for SSI and DIB, Plaintiff alleged that she became disabled on August 8, 2007. (AR 100, 107.) In a Disability Report, however, she claimed that she became unable to work on December 1, 2004. (AR 137.) Plaintiff does not appear to dispute the ALJ's finding that her "alleged onset date" is December 1, 2004. (AR 12.) Though in the Joint Stipulation Plaintiff cites August 8, 2007 as the alleged onset date, the Agency argued therein that the ALJ properly concluded that Plaintiff had not performed substantial gainful activity after the alleged onset date of "December 1, 2004," and Plaintiff did not contest this argument. (Joint Stip. 1, 4-6.)

A claimant's former occupation qualifies as "past relevant work" if it was performed in the last 15 years, for a long enough to allow her to learn how to do it, and produced enough income to qualify as "substantial gainful activity." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Agency has established monthly earnings thresholds for substantial gainful activity that vary by year. For the years applicable to this case, the monthly earnings thresholds are as follows: 1990 to June 1999-$500; July 1999 to 2000-$780; 2001-$740; 2002-$780; 2003-$800; 2004-$810; 2005-$830; and 2006-$860. 20 C.F.R. §§ 404.1574(b), 416.974(b).

Plaintiff's annual earnings record demonstrates that her income in 1996 was $8,809.00. (AR 112.) This amounts to $734 per month, or $234 per month more than the threshold for substantial gainful activity that year.[2] According to Plaintiff, she worked as a data entry clerk from 1996 to 2004. (AR 28-29, 128.) Presumably, this eight-year period was sufficient for her to learn how to perform this job and she does not argue otherwise. Based on these facts, Plaintiff's employment as a data entry clerk constituted past relevant work under the regulations, i.e., she performed it within the 15-year period preceding the ALJ's November 2009 decision, her monthly income from the job in 1996 exceeded the threshold and thus the work qualified for substantial gainful activity, and she worked at the job long enough to learn it. Though the Court would agree with Plaintiff that the ALJ failed to articulate these facts and explain how he

---

[2] Plaintiff concedes that her earnings for 1996 "possibl[y] met the requirements of substantial gainful activity." (Joint Stip. 4.)

arrived at his conclusion (AR 18), it is readily clear from the record that his conclusion was correct.

The ALJ also determined that Plaintiff had past relevant work as a child care provider. (AR 18.) According to Plaintiff, she worked as a child care provider from 2004 to 2006. (AR 29-30, 128.) But Plaintiff's annual earnings for these years ($3,821 (2004), $2,730 (2005), and $3,815 (2006)) suggest that her monthly income--$318 at most--was below the threshold for that job to qualify as substantial gainful activity ($810 in 2004, $830 in 2005, and $860 in 2006). Accordingly, the ALJ's finding that this work qualified as past relevant work was erroneous.

The Court concludes that the ALJ's error was harmless, however, because his finding that Plaintiff had past relevant work as a data entry clerk is supported by the record and is enough to support his ultimate determination that Plaintiff is not disabled. Thus, the ALJ's finding that Plaintiff's work as a child care provider qualified as past relevant work was inconsequential to the ultimate nondisability determination and, therefore, is harmless. *See Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).[3]

B. <u>The ALJ's Credibility Determination</u>

In her second claim of error, Plaintiff argues that the ALJ erred when he found that she was not credible and discounted her subjective complaints. (Joint Stip. 8-11.) The Court finds that there is no merit to this claim.

---

[3] Plaintiff also takes exception to the ALJ's finding that her date last insured was in 2007, not 2010. (Joint Stip. 4.) The Court need not and does not address this issue as it does not have any impact on the ALJ's finding that Plaintiff's work as a data entry clerk was past relevant work.

Where, as here, a claimant produces objective medical evidence of an impairment that reasonably could be expected to produce the alleged symptoms, an ALJ must provide "specific, clear and convincing reasons" to discount the claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The ALJ provided several such reasons to support his credibility finding in this case.

The ALJ found that the objective medical evidence did not support Plaintiff's subjective complaints. (AR 15, 17-18). He noted, for example, that examining psychiatrist Abejuela opined that Plaintiff had "no mental restriction in [her] daily activities" and that her "[o]verall" "psychiatric limitations range[d] from none to mild." (AR 15.) He also noted that examining psychologist Larson opined that Plaintiff had moderate impairments in her "ability to interact appropriately with supervisors, co-workers or the public," but found either no impairments or only mild impairments in five other areas of functioning. (AR 15.) These doctors' findings were clearly inconsistent with Plaintiff's claimed limitations.

The ALJ also pointed out that one examining internist, Dr. Chang, found that Plaintiff could perform medium work with some restrictions and that another, Dr. Eriks, who performed a second internal medicine evaluation at the Agency's request, found no limitations. (AR 17-18.) These doctors' findings suggest that Plaintiff's claimed inability to work based on her physical ailments was not valid. Although lack of objective medical evidence supporting the degree of limitation cannot be the sole reason for discounting a claimant's testimony, an ALJ is permitted to consider it as a factor in assessing the claimant's credibility. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ provided additional reasons for questioning Plaintiff's claims. He noted several inconsistencies between Plaintiff's testimony and the medical records. For example, Plaintiff denied drug use in a questionnaire she filled out for examining psychologist Larson, despite records and testimony that she had used drugs. (AR 15 (citing AR 460, 465); *see* AR 26 (testifying that she smoked marijuana "maybe every six months"); AR 239 (clinical note stating Plaintiff has "[h]istory of marijuana use in the past"); AR 391-93 (hospital records documenting that on admission to emergency room--where Plaintiff had been dropped off in somewhat unusual circumstances--Plaintiff "exhibit[ed] classic signs of narcotic withdrawal" and assigning a diagnostic impression of "[n]arcotic overdose").)

The ALJ also observed that Plaintiff exaggerated her medical history to one of her examining physicians. (AR 18.) She told him, among other things, that she had "a permanently fractured ankle" and "severe degenerative arthritis with disc disease in her low back." (AR 471.) The evidence shows that this was not true.

The ALJ properly considered the inconsistencies between Plaintiff's statements and the medical evidence in discounting her credibility. *See Batson v. Comm'r*, 359 F.3d 1190, 1196-97 (9th Cir. 2004) (holding that "contradictions from [the claimant's] own testimony and the lack of objective medical evidence supporting [his] claims," among other things, justified the ALJ's adverse credibility determination).

The ALJ also found that Plaintiff's daily activities undermined her claim of disability. (AR 14.) The ALJ noted, for example, that Plaintiff testified that her kids were doing fine and that she was able to take care of them. (AR 13; *see* AR 33.) Indeed, Plaintiff

reported to an examining physician that she "spend[s] most of her day trying to keep up with her 2-year-old. She also does much of the cooking, cleaning, shopping, laundry, and driving for the family." (AR 472.) The ALJ observed that Plaintiff wrote in a Function Report that "she takes care of her kids properly," "has no problems with personal care," "is able to cook, do dishes and laundry," and can "pay attention all day." (AR 14; *see* AR 144-45, 148.) The ALJ properly considered these activities in discounting her credibility. *See Batson*, 359 F.3d at 1196 (upholding ALJ's finding that claimant was not credible where he contended that he could not work because of pain but was able to tend to his animals, walk outdoors, go out for coffee, and visits with neighbor); *Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999) (upholding ALJ's adverse credibility determination where "ALJ determined that [the claimant's] ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child served as evidence of [his] ability to work").

Finally, the ALJ noted that Plaintiff continued to work after her alleged disability onset date and that her "earnings show work activity at a level equal to or above what was earned before the alleged onset date." (AR 13-14.) In 2001, 2002, 2003, and 2004, Plaintiff earned $2,128.97, $2,600.00, $8,920.00, and $3,821.91 respectively. (AR 113.) Following Plaintiff's alleged disability onset date of December 1, 2004, she earned $2,730.12 (2005), $3,815.95 (2006), and $1,867.02 (2007). (AR 113.) Thus, Plaintiff's earnings before and after her alleged disability onset date were similar enough to suggest that her alleged impairment had no impact on her ability to work. And the ALJ properly considered them in assessing her credibility. *See, e.g., Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir.

2009) (holding claimant's "recent[] work as a personal caregiver for two years," among other things, "belie[d] [her] claim" of disability). In sum, the ALJ provided clear and convincing reasons that were supported by substantial evidence for discounting Plaintiff's credibility. As such, the credibility finding will not be disturbed.[4]

[4] To the extent that Plaintiff was attempting to raise a third issue, relating to the ALJ's failure to find her disabled based on several Global Assessment of Functioning ("GAF") scores (Joint Stip. 8), this claim is rejected. In order for Plaintiff to properly raise an issue, she has to set it under a separate heading and signal to the Court and the Agency that she believes that it is an issue worthy of analysis. Had Plaintiff done so, the Court would still have affirmed the ALJ's decision. Plaintiff was assigned GAF scores of 24, 35, and 40, all of which reflect very serious psychiatric symptoms, during an episode of acute depression in October 2007. (AR 277, 283, 285.) The ALJ set out the scores in his decision and explained why he was discounting them, i.e., because they were "inconsistent with one another . . . and [with] releasing [Plaintiff] from [inpatient] treatment after three days with a GAF of 35 and opining she was stable" and were "situational and based on subjective evidence." (AR 15.) This was more than he was required to do, *see McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (holding ALJ's failure to address GAF scores did not constitute legal error), as the Agency has does not endorse GAF scores because they do not have "a direct correlation to the severity requirements in [the Agency's] mental disorder listings." 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000). The Court finds that the ALJ's interpretation of this evidence was rational and therefore will be upheld. *See Burch*, 400 F.3d at 680-81.

IV. CONCLUSION

For these reasons, the Court concludes that the Agency's findings are supported by substantial evidence and are free from material legal error. As such, the decision is affirmed.

IT IS SO ORDERED.

DATED: October 14, 2011.

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\JORDAN, R 1546\Memo_Opinion.wpd